## BICKLEY v. ELECTRIC SORTING MACH. CO. et al.

### No. 2842.

District Court, W. D. Michigan, S. D.

June 18, 1940.

Melville E. Jones, of Washington, D. C. (Smith, Strawhecker & Wetmore, of Grand Rapids, Mich., of counsel), for plaintiff.

Earl & Chappell, of Kalamazoo, Mich., for defendants.

RAYMOND, District Judge.

#### Findings of Fact.

1. Plaintiff is a citizen and resident of the State of Pennsylvania.

2. Defendant Electric Sorting Machine Company is a Michigan corporation with a regular and established place of business in the City of Grand Rapids, Michigan.

3. Defendant C. H. Runciman is a resident of Lowell, Michigan, and does business under the name of C. H. Runciman Bean Elevator.

4. Plaintiff is the owner of the Letters Patent in suit 1,921,862, issued August 8, 1933.

5. Claims 1, 2, 14 to 17, 20 and 21 of patent 1,921,862 are in suit.

6. The patent is for an automatic sorter. It covers sorting machines broadly although it uses a bean sorting machine as an illustration of the invention. In common with the sorting machines of the prior art, the patent has a conveyor which carries the objects to be sorted past a light sensitive element where they are inspected. The objects to be sorted are fed from a hopper to the conveyor where they are properly positioned so that they will be carried by the inspecting station, and there are means controlled by the light sensitive element for ejecting the objects to be sorted after they have passed the light sensitive element so that the desired sorting will be accomplished.

7. The machine of the patent in suit has a hopper 42 which is filled with a supply of beans and feeds them to a magazine 30 wherein they encounter a rotating cone-like hub of the table 21 which distributes the beans through ports 36 into ways 32 which are bounded by converging and generally radially extending guides 33 under which the rotating table 21 moves. The rotation of the table 21 causes the beans to travel along between the converging guides 33, working the beans into single file by the time they finally pass out of the outlet 34 between the guides 33. These guides and the motion of the table position the beans and aline them so that they are fed single file into a groove 31 near the edge of the table.

The beans are tumbled about as they pass through the guides 33 so that they are all positioned with their axes parallel and their centers of gravity at the bottom. After the beans drop into the groove 31 they are carried to an inspecting station where a light 64 illuminates them. The light passes through a condensing lens 71 so that the rays are directly focused upon the bean. A photoelectric cell 57 is positioned above the periphery of the table to inspect the beans thus illuminated by the light which is directly focused upon them.

It is important in this machine that the beans all be positioned in exactly the same way so that they will all present the same surface for inspection and illumination by the focused light, since a change in posi-

tion would interfere with the proper viewing of the bean by the photoelectric cell.

The patent shows diagrammatically an electric circuit in which vacuum tubes or thermionic valves are employed to amplify the current from the photoelectric cell. The patentee does not describe this circuit as adjustable and the only means he has for varying the effect of the machine is the adjustable shutter 72 which controls the lighting.

The electric circuit controls a pneumatic valve 44 through an electromagnet. The patent explains that changes in light which reaches the photoelectric cell by reflection from the beans due to variations in the color of the beans will cause variations in the resistance of the circuit, and that such variations will cause the switch 51 to remain closed for different time periods for beans of different color. If a white bean passes the cell the valve will stay open longer causing the pneumatic discharge pipe to emit a strong puff of air so that the bean is blown out of the grove 31 to an outer collecting funnel 15. If the bean is slightly darker the ionization of the photoelectric cell 57 will differ and the circuit which controls the valve will be held closed for a shorter time so that the valve will be opened for a shorter time and will emit a weaker puff of air which will blow the bean into an inner collector 13. If the beans are darker they will not energize the photoelectric cell in the circuit and they will be scraped off into an inner collecting funnel 13 by the guides 13.

8. The machine of the patent in suit never went into commercial use and the patent must be considered to be a paper patent.

9. The patent in suit does not show a machine disclosing refinements which are necessary for commercial sorting. The means for illuminating the beans focuses the light directly upon the beans to be sorted; the details of the arrangement of the photoelectric cell and its circuit are shown only diagrammatically, and the details of the pneumatic valve and its operating mechanism for giving variable puffs of air dependent upon the color of the beans are left to be worked out by the man skilled in the art.

10. In the prior art there were many sorting machines making use of endless conveyors to present the objects to be sorted in single file to a light sensitive viewing means, either a selenium cell or a photoelectric cell. In these prior art sorting machines the light sensitive elements controlled ejecting means and the power of the light sensitive elements was amplified by various amplifying means including relays or thermionic valves which are now commonly called radio tubes or vacuum tubes. The prior art machines had various means for positioning the objects to be sorted on the conveyor and for holding them against movement on the conveyor. It was essential that the objects to be sorted be carried into the focus of the light sensitive element, since the light sensitive elements are not of such nature that they can be moved about over a conglomerate mass of objects to be sorted.

11. At the time Bickley made his sorting machine, photoelectric cells were the recognized equivalent of selenium cells and had been used in sorting machines interchangeably with selenium cells. No invention was involved at Bickley's time in substituting one for the other.

12. At the time Bickley made his sorting machine, thermionic valves or vacuum tubes, as they are now commonly known, were well-known means for amplifying current from photoelectric cells or selenium cells and had been used interchangeably in sorting machines with relays and along with relays were a common and well-known means for amplifying current from light sensitive elements such as photoelectric cells or selenium cells. No invention was involved at Bickley's time in substituting one for the other.

13. McWilliams patent 1,080,988 shows a bean sorter having all of the essential elements of the bean sorters here involved. There is a hopper 11 with a small discharge opening 13. The conveyor which is a belt 18 passes through the hopper and picks up individual beans in spaced pockets 19 which are of a size to receive a single bean. The walls of the hopper hold back excess beans and the side walls of the pockets 19 hold the beans against lateral motion. The beans in spaced pockets are alined in position at the desired intervals along the conveyor. The conveyor carries the beans to a chute where the light sensitive element 32 is located. As the beans pass the light sensitive element, light reflecting from them affects the light sensitive element which in turn controls a solenoid 26 which moves a chute 25 to either accept or reject the bean, depending upon its color.

14. In Weigl German Patent 99926 the beans are placed in a funnel or hopper $a$ from which they are fed to a drum conveyor $b$ which passes through the hopper or funnel to pick up individual beans. The drum conveyor has holes on its periphery to pick up a single bean. The beans are alined and spaced on the conveyor and are carried by it into the range or focus of the light sensitive element $f$ where they are illuminated by a lamp $d$, the light from which passes through a condensing lens $e$. The light sensitive element $f$ is arranged in a circuit $g$ with a relay $h$ which controls the armature $i$ of a switch controlling the circuit $k$ in which there is a solenoid $m$ to actuate the anglelever $o$ to operate ejectors $e$ which consist of pins mounted within the drum $b$.

When a dark bean which is to be rejected passes before the light sensitive element $f$, the resistance in circuit $g$ is increased, causing the relay $h$ to close the circuit $k$ energizing solenoid $m$ and causing the lever $o$ to force the ejector $e$ outwardly causing the bean to fall into the container $q$ for rejected beans. Light colored beans are carried by the conveyor until they drop into container $r$.

15. In the prior art are many conveyors comparable with the conveyor of the defendants' machines. These conveyors take individual seeds such as beans from a hopper and carry them around to a given point.

Colver patent 9439 shows a drum B with holes or pockets in its peripheral surface to receive single seeds. The drum rotates through the hopper against the seeds which are picked up in the pockets. A brush G sweeps back all of the seeds except those deposited in the pockets.

Sheetz patent 1,006,984 shows a conveyor consisting of a vacuum drum which sweeps up through the beans in the hopper. There are holes in the periphery of the conveyor against which individual beans are held by vacuum in spaced alined arrangement as in defendants' machine. When the beans are carried to the desired point, they are discharged by breaking the vacuum with a shoe inside the drum.

Slathar patent 1,762,671 shows a conveyor of the vacuum drum type which picks up individual seeds on apertures at the periphery.

Gillespie patent 1,460,650 is another example of a similar conveyor of the vacuum drum type which has nipples 26 thereon comparable with the nipples on the conveyor of defendants' machines.

16. Weigl British patent 16,035 shows a sorting machine in which the beans drop through a chute 5 from a hopper 1 to a cylinder 8 which has shallow openings 9 proportioned to admit a single bean. The beans pass from the cylinder into a funnel 10 which positions them on the conveyor belt. Arms 21 and 22 also position the beans on the conveyor belt and aline and space them thereon. The beans are carried to a light sensitive element which actuates a sorting or ejecting means to separate the white beans from the darker colored beans.

17. Weigl patent 1,874,069 shows the use in a bean sorting machine of positioning means, a conveyor and sorting means actuated by a photoelectric cell and vacuum tubes or thermionic relays.

18. Ladd patent 1,396,221 shows a sorting machine. The objects to be sorted are fed from a hopper 67 which positions the articles to be sorted and places them on a conveyor. These articles are alined and spaced on the conveyor and are held against motion. The conveyor carries the articles in single file past a photoelectric cell and a lamp and reflector. The photoelectric cell is provided with suitable amplifying means and the signal from the photoelectric cell controls discharge or ejecting members which sort the articles according to color.

Ladd patent 1,432,762 is substantially the same.

Ladd patent 1,649,168 discloses the use of a photoelectric cell and a thermionic valve or vacuum tube for amplifying the current therefrom for sorting.

19. Rundell patent 1,626,359 shows an apparatus with an endless conveyor 24 with means for holding the objects to be sorted against displacement in spaced and alined relationship thereon. The objects to be sorted are carried by the conveyor past an inspecting station where they are illuminated by lamps 38 and are viewed by photoelectric cell 40. The signal received from the photoelectric cell 40 is amplified by vacuum tubes 45 which control sorting or ejecting means which distribute the objects in accordance with their color.

The Rundell machine shows many refinements in the circuits and the means for checking the photoelectric cell.

20. Winkley patent 1,294,740 shows an apparatus in which the objects to be sorted

are taken from a hopper 10 and placed on a conveyor 128. The objects are held on the conveyor against lateral motion and the conveyor carries them in spaced alined relationship to an inspecting station where they are viewed by a light sensitive element. The light sensitive element controls sorting or ejecting means which sort the objects in accordance with their color.

21. In Cooper patent 1,960,231 there is a conveyor which receives the objects to be sorted from a hopper. They are carried to an inspecting station where they are viewed by photo-sensitive cells and the undesirable articles are released or ejected from the conveyor by means of electromagnets controlled by the photo-sensitive cells.

22. The defendants have in no way copied the structure of the Bickley patent and have not made use of the essentials of the claims in suit. Defendants have refined and improved upon the prior art and have made use of principles well known in the prior art which Bickley said, in prosecuting his application, could not be applied in commercial sorting.

23. Defendants' machines have a supply pipe which feeds beans into a hopper, a rotary suction drum provided with tubular suction nipples at its periphery which sweep upward through the beans in the hopper. The individual beans are held on the ends of the tubular suction nipples by the vacuum and are jerked from a condition of rest in the hopper to the full speed of the conveyor. The beans are seated on the nipples in a great variety of positions which is not objectionable in defendants' machine because of the means which are provided for illuminating and inspecting the beans which are effectively illuminated, regardless of the position of the long axis of the beans or the center of gravity thereof. The illuminating means consists of a housing provided with a light and a plurality of reflectors which flood the bean with a uniform soft light as it passes the inspection point. A photoelectric cell and vacuum tubes are provided for controlling the ejection of beans from the conveyor. The beans are viewed by the photoelectric cell through a lens. The photoelectric cell receives a signal when an off-color bean passes the inspecting point. This signal is carried by a memory device and operates a solenoid operated mechanical ejector after the bean has left the inspecting point. By means of this arrangement, it is possible to avoid having the mechanical ejector cast any shadows which would interfere with proper inspection of the beans. The ejecting finger which defendants use operates with the same force every time it operates, whether the bean is completely black or is merely slightly discolored. The ejecting energy is not proportioned in accordance with the color of the bean. Beans which are not ejected at the ejection point are discharged from the conveyor by means of a shoe which breaks the vacuum. There are no distinct distributing and alining means and no means for restricting lateral motion of the beans comparable with those of the Bickley patent. The beans are not tumbled and are not fed at increasing speed or with increasing spacing as in the machine of the Bickley patent.

24. The suction nipples of defendants' machine may pick up two beans at one time. On some machines defendants provide brushes which extend into proximity to the beans on the nipples to knock off such doubles. These brushes do not serve to position the beans.

In place of the brushes, bent wires are employed in some of defendants' machines. These do not position the beans and serve only the function of removing doubles.

The defendant Runciman operates his machines with the brushes so set that they do not position the beans and so that they merely serve to remove doubles.

25. On defendants' machine at the top of the drum conveyor are sheet metal wings. These wings do not serve to position beans on the conveyor. They merely keep beans which are carried up by the conveyor and which are not seated on the nipples from falling on the floor.

26. Claim 1 calls for four distinct elements, namely:

(1) An alining support,

(2) Means for restricting lateral motion of the objects to be sorted,

(3) A device for feeding objects to the alining support, and

(4) Distributing means to arrange the objects in spaced single file on the support.

The distributing means of this claim are the guides 33 and the portion of the table therebetween which serves to distribute the beans and feed them along at increasing speed with increasing spacing in single file.

Defendants' machine does not have all of these elements. If the drum is called the alining support, and the nipples means

for restricting lateral motion, and the hopper a device for feeding objects to the support, there is no distributing means as called for in the claim. If the nipples of defendants' machine are called the distributing means, they cannot be called the means for restricting lateral motion. The claim is not infringed.

27. The brushes for removing doubles and the wings to keep beans from falling on the floor on defendants' machine are not means to restrict lateral motion of the beans. Their presence does not make defendants' machines infringements of Claims 1, 16 and 17 of the patent in suit.

28. Defendants' machines do not sort the beans into several classifications. They merely accept the white beans and reject all of the off-color beans, regardless of the extent to which they are off-color. For this reason, defendants' machines do not infringe Claims 1 and 20 which specify means for sorting objects whereby all objects of like color are collected together, or Claims 14 and 16 which call for sorting objects according to their light reflecting surfaces, or Claim 15, which calls for segregating objects in accordance with the markings on the surface of said objects, or Claim 17 which calls for segregating objects according to their light absorbing characteristics, or Claim 21 which calls for a valve actuated in accordance with the color of the objects presented to the photoelectric cell.

29. Claim 2 is not infringed because defendants do not have any means of ejecting energy in which the energy of ejection is proportioned by the color of the objects to be sorted. This phase of Claim 2 is directed to the pneumatic jet and the variable pneumatic valve which is operated to give variable puffs of air proportioned to the extent of discoloration of the beans. In defendants' machine the solenoid and the ejector operate with the same force every time they operate, so that it cannot be said that the energy of ejection is proportioned by the color of the beans. A slightly off-color bean is given the same ejecting energy as a very dark colored bean.

30. Claim 14 calls for a feeding member, a distributing member to give increasing space between objects to be sorted, and an alining means cooperatively associated with the distributing member.

Defendants' machines do not have the distributing member to give increasing space between objects. The conveyor of defendants' machines jerks the beans from a position of rest to the full speed of the conveyor and there is not the gradually increasing spacing which is found in the Bickley machine where the beans are tumbled about and fed outwardly between the guides.

The defendants' machine does not have all three elements, regardless of how the claim is applied to defendants' machines. The suction nipples on defendants' machines cannot be both the distributing member and the alining member. There is nothing on defendants' machines which serves the function of Bickley's alining member which gets the beans in line before they reach the groove. The beans in defendants' machines are merely picked up from the mass by the conveyor.

31. Claim 15 calls for a feeding member, a distributing member, and an alining element to separate the objects on the distributing member to form an alined series. If the hopper of defendants' machines is the feeding member and the drum and suction nipples and alining element, there is no distributing element. If the drum and nipples are called a distributing member, there is no alining element. All of the elements of the claim are not present in defendants' machines so they do not infringe the claim.

32. Claims 16 and 17 are not infringed by defendants' machines because they call for a positioning means to arrange objects so that all objects present substantially the same surface to the light sensitive element. This element in the Bickley machine consists of the guides and the table which tumble and roll the beans until they are positioned with their heavier sides down and the groove into which the beans fall so that their long axes lie parallel so that the focused light will strike the beans in the same place. Defendants' machines pick up the beans in various positions and these positions are not changed during the conveying and viewing. It is not necessary in defendants' machines to have the exacting positioning because of the lighting and inspecting of defendants' machines. This element is not present and the claim is not infringed.

33. Claim 20 calls for guiding means for separating and feeding objects at increasing speed, alining and arranging the objects so that all occupy the same relative position in single file on the support. Defendants' machines do not have any such element. The beans are not fed at in-

creasing speed. The conveyor merely jerks them from a position of rest to full speed. The objects are not alined and arranged as in the Bickley patent and they do not all occupy the same relative position on the support. The beans assume a variety of positions. It is important in the Bickley machine to have all beans occupy the same position because of the inadequate lighting arrangement. This is unimportant in defendants' machines and is not present. There is no infringement.

34. Claim 21 calls for means for ejecting energy and valve means for controlling the ejections of the ejecting means. There are no valve means in defendants' structure. The ejecting means are mechanical. The valve means of this claim are the pneumatic valve of Bickley and are not the thermionic valve or vacuum tube.

35. The file wrapper of the Bickley patent is confused. It does disclose that the Patent Office intended to grant Bickley a patent so limited that it cannot be read upon defendants' machines. The patentee argued extensively the advantages of using a pneumatic valve instead of a mechanical ejector such as used by the defendants. The patentee explained that such a device was not practical. The patentee argued strenuously to obtain his patent, that the positioning of the beans in the exact position shown was an important factor, and eventually prevailed upon the Patent Office to grant him claims limited to this particular phase of his machine. The Patent Office refused time and again to give broad claims covering merely the combination of a conveyor and a hopper, and an ejecting means operated by a light sensitive element or photoelectric cell. The Patent Office refused to give broad claims covering vacuum tubes or thermionic valves instead of other devices for amplifying the current from light sensitive elements.

### Conclusions of Law.

1. The claims in suit of the Bickley patent 1,921,862 are not infringed.

2. The claims in suit of the Bickley patent 1,921,862 are limited to the specific elements defined therein and cannot be interpreted as reading on defendants' machines.

3. The Bickley patent in suit 1,921,862 is so limited by the prior art that it cannot be construed to read upon defendants' machines.

4. The plaintiff has failed to establish infringement of the patent in suit by the defendants or either of them.

5. The complaint herein is dismissed with costs to the defendants.